We're honored to have sitting with us this morning is the visiting judge, the Honorable Allison Burroughs, District Judge from the District of Massachusetts. Welcome, Judge. Thank you. Nice to be here. We have five cases on the calendar this morning, two from district courts, one from the Veterans Court, one from the Patent Office, and one from the MSPB, which is being submitted on the briefs and will not be argued. The first argued case is Clearplay v. DISH Network and Echostyle, 2023-2134. Mr. LeClerc, is it? Yes, Your Honor. The district court's fundamental error in issuing JMAL is it did not appreciate how to apply the proper standard of review to the jury verdict. It failed to recognize that the JMAL analysis must apply the instructions as given to the jury, including the claim construction, which is part of the jury instructions. It also failed to recognize that the court in JMAL is not in a position to make its own factual findings. DISH acknowledges in its statement of the issues on Clearplay's appeal that these are governed by the substantial evidence standard. This is not a claim construction exercise. But the district court failed to look for substantial evidence supporting the jury verdict, and it failed to draw all reasonable inferences in Clearplay's favor. But the standard for JMAL, is it not no legally sufficient basis to support the jury's infringement side? Yes, Your Honor. Well, I mean, we can debate whether he did that or not, but why don't you give us some specifics, starting with the 970 patent? Yes, Your Honor. In the 970 patent, the Court applied a different claim construction than the instructions given to the jury. In looking for substantial evidence, the substantial evidence that must be sought Let me ask you, in terms of construction, is there any dispute that directly disables, the action must directly disable? No, Your Honor. That was part of the instructions. There is no dispute that it must directly disable. The question is what reasonable interpretation was the jury free to make out of the many interpretations that could be made under the instructions, including directly disable. So are we defining what directly means? No. That would be a markman analysis. We are determining whether the jury's interpretation of the instruction given was one reasonable interpretation, and whether substantial evidence presented to the jury supported their finding of infringement under that interpretation. And we can see from the Court's JMAL that it applied a very different Okay. Show me where in the JMAL. Sure. Well, I believe an easy exercise for that comparison is actually looking at the red brief of my friend at page 33, where there is a side-by-side comparison between the jury instruction of that construction and one of the articulations within the JMAL order. Now, the red brief describes the JMAL construction on the right in the bottom of the previous page as being, quote, simply plugging the segment bookmarks into the instruction as the accused's navigation objects. But we can see in the actual language this was a substantially different construction used. There are three significant differences, but the one that I'd like to draw the most attention to is what has been referred to as the disabling exclusion. This is language within the original construction that identifies a scenario when disabling is not direct. In that red, as opposed to disabling something other than the navigation object that results in the navigation object's filtering action being ignored, in comparison on the right, the JMAL analysis significantly expanded that negative exclusion. It reads, rather than acting on or disabling something else that indirectly affects the segment bookmarks or simply results in segment bookmarks being ignored. That acknowledges that disabling is different than acting on. You can disable something without acting on it. You can act on something without disabling it. The JMAL construction expanded the negative exclusion in order to shrink what was covered then by direct disabling, the active portion of the instruction. There are other changes that were made as well. So tell me again, I'm looking at page 33, on the JMAL order and the, there. What words? Where did we start to get off the lane from the JMAL instruction? What words? Well, the words in the change that I just identified begin with acting on or disabling. It's that adding of the acting on or, rather than merely disabling, something else. Another change that was made is that the JURY instruction included an indicating condition, focusing on intent as one element of direct disabling. On the left, we see that an action must directly dis, Well, do you think that the claim construction would have allowed for something that indirectly affects the segment bookmark or simply results in the bookmarks being ignored? Do you think that's an error in terms of the claim construction? That was an interpretation that the JURY was free to draw under the JURY instruction that if something else is acted on but not disabled, that is not within the disabling exclusion, and if that action was taken with intent, for example, a light switch was used as an analogy before the JURY, if something is acted on with the intent of disabling something, then that acting on the first thing can be an act of directly disabling the other, such as flipping off of a light switch in order to directly disable the lamp connected behind it. The language within the JURY instruction, so that its filtering action is ignored, reflects precisely that type of intent, which was removed from the JAMAL analysis on the right. In addition to change But you're saying you need, you need the intent? It's not necessary, no, it's not needed. However, the JURY was charged with determining directness. This is something that often is sent to the JURY, and JURYs may consider a variety of factors, including intent, including proximity, proximity of time, proximity of causation, in making the factual determination of whether a disabling was direct or not. It is the  I'm having a hard time seeing where in the record the accused navigation objects are disabled. At most, all I can see in the record is that something other than accused navigation objects are being disabled. Am I wrong? Can you identify where in the record AutoHop directly disables the navigation object? Where, what's your evidence of that in the record? Yes, Your Honor. The record reflects, and the JURY heard, that variables which control whether or not commercial skipping occurs have their values changed between true and false. There is no argument, even by DISH or no testimony by its expert at trial, that that qualifies as disabling something else. Those variables continue to function. The JURY So those examples directly disable the navigation object? Yes, Your Honor. When a user selects, for example, the no thanks button in response to being prompted whether they wish to enable commercial skipping, the user selection at that user input sets a variable that is checked by the AutoHop code, which is always running in the background, which was admitted, for example, by DISH's own fact witness at 18-347, that AutoHop was always running. If the user has made a selection that it does not, the user does not wish to skip commercials when the variables are checked in an if statement that determines that the filtering action, the commercial skipping, will be ignored depending on the variable's value. The variable still functions. The JURY was free to conclude, to provide its factual finding that the variable is not disabled. It is still operating, just as a light switch which controls a lamp, on or off, is still enabled. The switch is performing its function unless something blows out in the switch or it's disconnected from the wiring of the wall. Where's the navigation object that's disabled? What is the navigation object? So the navigation objects are what are called segment bookmarks. There was not a dispute that those satisfied that requirement. So what is the direct disabling of the segment bookmark? Yes. There are two scenarios of that infringement, Your Honor. The first is the no thanks button. At the beginning of each playback, the user may select whether or not to enable or disable channel skipping. That sets a first variable to either true or false, depending upon the user's selection. That display of the option is providing for disabling. The setting of the variable does directly disable, then, the segment bookmark's filtering actions. The second act of infringement, which was presented to the jury, is based on changing playback speed between normal play mode and another mode, such as fast forward. When the user selects an option, such as fast forward, that changes a different bookmark, which is also checked before a skipping action would occur. If the user is in fast forward, for example, when a commercial would normally have been skipped, it is entered into and played. So that skipping action is ignored. The filtering action is ignored because it has been directly disabled. So are you saying if something's not enabled, then it is disabled? That question doesn't go directly to the jury instruction. That's interesting. I don't believe that something would absolutely need to be either enabled or disabled, but that really doesn't fall within the language that went to the jury in the construction. But isn't that exactly what you were just explaining to us, that on the no thanks thing, that the segment bookmarks aren't disabled, they're bypassed or they're ignored? No, they aren't. The filtering action of the segment bookmarks is ignored when the check is made. So I will explain in a little bit more detail. At time point one, the user is asked, do you wish to disable, to skip over commercials or not? By making their selection, a variable is set. That is the direct disabling. That variable is later. As my colleague said, there's only an action to not enable AutoHop, not to disable the segment bookmarks. Is that wrong, what I just said? Yes, Your Honor. The jury was free to find that the segment bookmarks were disabled, their filtering action, rather, was disabled by virtue of setting the value. Counsel, I don't want to disable you. You're into your rebuttal time. I understand that. Thank you, Your Honor. I would reserve the remainder. All right. Mr. Chomsky. Good morning, Your Honors, and may it please the Court. Eric Chomsky for Dish. I think it's worth taking briefly a step back before jumping into the 970. Clearplay's fundamental contention is that notwithstanding having had its preferred theories as to both patents repeatedly excluded from the case as a matter of law in rulings it does not challenge on appeal, the jury instructions somehow allowed it to resurrect those very same theories at trial and the jury on that basis to reward nearly half a billion dollars. On the contrary, the district court properly granted judgment as a matter of law. So let me start with the 970 patent, briefly address the claim construction, and then Judge Prost get to your questions about substantial evidence. Clearplay's argument about the 970 is not faithful to the jury instruction. They ignore the last half of the critical sentence, what we call in our brief the disabling exclusion, which excludes disabling something other than the navigation object that results in the navigation object's filtering action being ignored. And so, Judge Prost, you asked if we are defining what directly means. And the answer to that is no, because the instruction already did that work for the jury and for us. And so turning to the question about what the record shows on this, Judge Prost, you said you're having a hard time seeing where the navigation object is disabled, and that's because it is not, and their own expert's testimony makes that clear. Feinster testified that when you select no thanks, it disables AutoHop, quote, for this playback instance of this show that's in the appendix at 18519. The variable that's affected governs whether, quote, AutoHop is enabled for this show. That's at 18522. Simply put, as Dish's senior vice president of software testified, if you select no thanks, quote, it's not doing AutoHop. That's at 18382. And if you look at the rest of Feinster's testimony, what is absolutely clear is that this variable that is changed when you select no thanks, that is in the AutoHop source code. It is not in the segment bookmarks, the accused navigation objects. And again, Feinster, and this is maybe the most important part of the testimony for these purposes. But is it – I'm not clear that I understand your friend's analysis, but I think part of what he's saying is that this action does not enable AutoHop, so it has an effect on the book segments. And then the question is, is it direct enough to come within the claim language? So I'm not 100 percent sure I understand the theory either, but the fact remains that when you select no thanks, it is not – there is no evidence of anything happening to the segment bookmarks. All of the action is elsewhere. It is in the AutoHop source code. And Feinster again testified the segment bookmark files are, quote, not a part of the source code. They are, quote, separate and distinct from AutoHop software. That's in the appendix at 18770 to 771. Let me just spit out the site so that you have it, in 18773. It's doing a different thing in a different place. Can I just take you to where your friend's sort of began, which is page 33 of your brief and the comparison that he drew between the jury instructions and the Jamal order? Sure. So what's your reaction to the argument he was making about the impact of the different language of the QC? So I think it is an incredibly uncharitable ruling of a Jamal order. Of course, a district court in a case like this is able to and does not commit reversible error when they simply paraphrase and are explaining what the proper analysis was. But at the end of the day, it makes no difference at all. Of course, review of Jamal is de novo, and the question is under the instruction here. The question is not whether the district court used some slightly different words. Now, I don't want to create a misimpression. I really don't think there is any actual daylight here. The only thing that my friend has identified is a question of intent, which they read into the words so that. That argument about intent appeared in this case for the first time in the reply brief on appeal. They didn't argue anything about intent. They didn't argue it previously. They didn't argue it in the opening brief. And I don't think that there is any intent requirement packed into the jury instruction. Let me just very quickly add a note on this question of fast forwarding. The fast forwarding theory has exactly the same problem. When you fast forward, it just means that, quote, and again, this is from their own expert Feenster, that skipping would be disabled. That's at 18524. There is no action happening on the segment bookmarks themselves. It is all just something that is going on in the source code and which governs the mode of playback as a whole. Can I – in Gray, clear play takes issue with your little lamp analogy and suggests that the jury was free to interpret directly disabled as covering acts that proximately cause disabling. Do you agree with that? So I do not agree with their read of the lamp analogy, nor with what occurred here. And I think it goes back to Your Honor's initial point. Is that what the daylight is between what you're saying and what your friend is saying, that they're allowing for direct disabling to cover proximately causing the disabling? No, Your Honor, for the following reason. And again, I would emphasize sort of the disabling exclusion in the instruction. They put it a different way. If the full instruction were an action must directly disable a navigation object, full stop, then maybe we'd have a nice conversation about what directly means. But the instruction goes on to tell us exactly what directly disabling means in this context, as opposed to disabling something other than the navigation object. And so we're not having a conversation here about proximacy. The issue, going back to the substantial evidence question, is that something entirely different is happening in a different place in the AutoHop source code. I wonder – I'm cognizant of the clock moving quickly. I don't want to close off this line of inquiry, but I do wonder if it makes sense for me to address the 799 patent. Yes, it does. You have half your time left, so please do. Perfect. Thank you, Your Honor. So let me turn to that. Clearplay does not dispute that there is no literal infringement under the single-object approach to navigation objects. That is, the approach that the Court undisputedly adopted as a matter of law at Daubert in granting us partial summary judgment, and again in a pretrial ruling. Their sole theory, going back to where I started, is that the jury instruction somehow allowed them to present a theory that the Court repeatedly had excluded from the case. But did the jury instruction say anything? Well, it didn't – the jury instruction didn't instruct the jury about the single-object instruction, right? So it instructed the jury in a couple of ways. It pointed to plain and ordinary meaning as defined by the terms of the claims. And so let's look at what the claims say. In the critical claim language, it specifies the – and this is at A372, column 22, lines 18 to 19 – the configuration identifier of the particular navigation object. There is a one-to-one pairing between the navigation object and the configuration identifier. And we know that from the use of the definite article, the, and especially from the language particular. We get that same formulation in columns 10 to 11, activating the filtering action assigned to the particular navigation object. And this is squarely controlled by this Court's decision in Wharf v. Apple. Wharf explains at pages 1347 to 48 that the plain meaning of particular is associated with a single thing. So in Wharf, it was a prediction and a load identifier, and the Court held that the word particular meant association with only a single load instruction and that association with more than one load instruction would not meet this instruction. That, again, was on JMOL. It's in exactly the same posture that we have here. And Clear plays multiple object or multi-object theory by which a navigation object is this sort of formless assigning of elements within the announcement file from which you can pick and choose and share among them is directly contrary to that claim language. I would add to that that the patent, in its sort of structural terms, enumerates what you can almost think of as Russian nesting dolls, right? And it says you have an object store. You create that. Then you separately create a plurality of navigation objects. You place them within the object store. In addition, it says, each navigation object contains, and I point the Court to column 4, lines 45 to 47, which is claim-limiting language in the written description. The present invention includes. And it says you create the navigation objects. Each navigation object contains a start, a stop, and a filtering action. Moreover, the instruction itself specifies that A267, the configuration identifier must be, quote, contained within the navigation object. So to your question, Judge Prost, did the instruction inform the jury of this single object approach? It did by pointing the jury to the claim language, which is absolutely unmistakable on this score. Every indication, the claims, the written description, and indeed the prosecution history, and I'll say a word about that in a moment, make clear that the navigation objects are self-contained and independent from one another. Now, on the question about the prosecution history, we lay all of this out in the red brief at 59 to 62. But again, we have clear play saying over and over and over to the Patent Office. It understands this patent in exactly these single object terms. Instead of pick just one example, at 13-842, it says that navigation objects are, quote, bundles of information that are not dependent on one another. And the PTO understood that this was the argument that they were getting. They said each navigation object, quote, necessarily contains a filtering action and is not a mere, quote, distributed association of elements. I would add that under this single object approach, clear play does not deny that they cannot prevail on literal infringement, and that's for good reason. The configuration identifier, here it's called a model targeting descriptor. They admit that it's shared. That's in their opening brief at 57, and we lay this out in the red brief at 65. They've also pointed to the show metadata field as the filtering element. And again, that plainly is shared. So on the DOE, the judge used the kind of two hands that we have on DOE, right? No function, no result, no particularized testimony. And then also this vitiation concept. So the vitiation seems to be tricky in some of the cases. I mean, it kind of read literally it could just undo DOE and it's a target, right? So is that a problem for us here? I don't think it is because I think the simpler way to resolve this is under function way result. Again, looking to Feimster's own testimony. Far from explaining, take a step back. As an initial matter, Feimster's testimony on this was exactly the sort of generalized testimony that this court repeatedly has said does not rise to the level of establishing DOE. But moreover, in talking about the- On vitiation, you've got sharing versus not sharing. Sounds like vitiation to me. And you've got a multi-object structure versus a single object structure. I absolutely, absolutely agree, Your Honor. And again, that's why the court ruled on the alternative and we argued it both ways. I would only say just in response to Judge Prost's question that Feimster's testimony also shows that you cannot meet function way result. These are being done in fundamentally different ways. And we know that because Feimster said that. He said that not sharing would be, quote, inefficient and ridiculous. That is the opposite of saying that they are being done in the same way. He himself testified that they were being done in fundamentally different ways, that sharing and not sharing. In my experience, in my recollection, which is purely anecdotal, a lot of these DOE claims that go down because they're not particularized and they're just general go down on summary judgment. Was there summary judgment on the DOE question? No, the court let this go to the jury. We thought that it should not have done so. But I might push back slightly. There are plenty of these cases that also go down on DOE after a jury verdict. My recollection is that Texas Instruments and VLSI are both after a verdict, and I believe we cite some others in our brief as well. Plastic Omnium makes absolutely clear that when you have testimony that doing something in a different way would be, again, to quote Feenster, inefficient or ridiculous. You are not doing it in the same way. So I see that I'm well past my time. I'm happy to answer any other questions about the argument in the alternative or our prosecution history estoppel argument about DOE if the court has any. Mr. O'Hare. It's very important that we keep our analysis focused on what was before the jury. Prosecution history arguments, arguments about other proceedings over these patents were not before the jury. What was before the jury were the instructions, including the claim construction. At Appendix 267, the jury received its instruction on configuration identifier, which my friend argues cannot have anything other than a one-to-one correspondence. That construction reads, configuration identifier means an identifier, singular, of the consumer system that is used to determine if the navigation objects, plural, apply to the particular consumer system. Right there in the jury's instructions, we see navigation identifiers, configuration, the configuration identifier permitting one configuration identifier for multiple navigation objects. We also see in the construction of navigation objects, which begins on the previous page and continues into 267, that that permits the elements of the navigation object being contained within the same object or file or data structure. So it's critical to keep our analysis here focused on the instructions. The JML order went to other documents. It went to the summary judgment order repeatedly. It cited summary judgment 34 times and only cited the jury instruction 12 times. That lost sight of the proper standard of review on JML. Briefly regarding the filtering action, which was also mentioned in connection with the 799 patent, substantial evidence before the jury showed that the filtering action does not appear only once in a shared manner, but instead appears for each of the navigation objects through positional values. That was testified to by Feimster at Appendix 18462. And when looking at the Doctrine of Equivalence, it is also important to look at the jury instruction. For the Doctrine of Equivalence, that was Appendix 274 where the jury was instructed that function way result is one way to show equivalence. They were then instructed that another way to show equivalence is in substantial differences. And they were instructed that known interchangeability may support a conclusion of equivalence. Discussing case law, discussing decisions and orders outside of the jury's universe, the jury's charge deviates from the core guiding standard of review in JML. Jury instructions are strategic choices made by the parties. They are as specific as the parties choose them to be, and they are not challenged here. So we must remain diligent in applying the instructions before the jury. We have your argument. Thank you to both counsel. The case is submitted.